754 So.2d 264 (1999)
STATE of Louisiana
v.
Jerry SCHWEHM.
No. 97 KA 1544R.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
Writ Denied March 31, 2000.
*265 Terry M. Boudreaux, Gretna, for Appellee, State of Louisiana.
Paul Baier, Baton Rouge, Lloyd Raner Walters, Slidell, for Defendant/Appellant, Jerry Schwehm.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
CARTER, C.J.
Defendant, Jerry Schwehm, was convicted of two counts of malfeasance in office, violations of LSA-R.S. 14:134. On a prior appeal, this Court affirmed one conviction and sentence, but reversed the remaining conviction and sentence for malfeasance in office. See State v. Schwehm, 97-1544 (La.App. 1st Cir.5/15/98); 713 So.2d 697. The Louisiana Supreme Court granted the state's writ application and reinstated the conviction and sentence which this Court had reversed. Additionally, the case was remanded to us for consideration of the assignments of error pretermitted on original appeal with respect to that conviction and sentence. See State v. Schwehm, 98-1599 (La.3/19/99); 729 So.2d 548.

FACTS
On December 13, 1990, defendant, a practicing attorney, was sworn in as the Justice of the Peace for Ward 8 of St. Tammany Parish. In January of 1994, the office of the legislative auditor conducted an audit of defendant's office. The investigation revealed that, as of the time of the investigation, defendant had not remitted to St. Tammany Parish any portion of the litter fines he had imposed and collected. Subsequently, defendant was indicted for two counts of malfeasance in office alleged to have occurred between January 1, 1991 and December 31, 1993. Count one charged that defendant failed to remit to St. Tammany Parish litter fines he collected as required by statute and parish ordinance. Count three charged that he illegally collected fees and charged persons for the lodging and filing of peace bonds with the Justice of the Peace's Court.[1]
On original appeal, this Court affirmed defendant's conviction and sentence on count three (peace bonds), but reversed his *266 conviction and sentence on count one (litter fines). Most of the assignments of error and arguments raised by defendant applied to both of his convictions equally and, therefore, were considered and disposed of in our original opinion. However, defendant raised several allegations in connection with a claim of ineffective assistance of counsel raised in his motion for new trial which related claim of ineffective assistance of counsel raised in his motion for new trial which related solely to his litter fine conviction. Because we reversed that conviction and sentence, consideration of those allegations was pretermitted. For the same reasons, we did not consider defendant's claim that the sentence imposed for his litter fine conviction was excessive. In accordance with the order of the Louisiana Supreme Court, we now consider these issues, which were the only ones pretermitted on original appeal.

INEFFECTIVE ASSISTANCE OF COUNSEL
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient, meaning that counsel made errors so serious that he was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment, and that counsel's errors prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Sanders, 93-0001, p. 25 (La.App. 1st Cir.11/30/94); 648 So.2d 1272, 1291, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996). In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
In the present case, defendant raises several allegations of deficient performance by his two trial attorneys which relate solely to the malfeasance conviction arising from litter fine collections. As noted by the supreme court in its per curiam, defendant's primary defense at trial with respect to the litter fine charge was the claim that there was a "[l]ack under state and local law of any time period for remittance of the litter fines by justice of the peace courts, together with the confusion interjected into the law by the conflicting 1992 enactments regarding LSA-R.S. 25:1112(A)...." Schwehm, 729 So.2d at 550. With respect to this defense, defendant argues on appeal that his attorneys were ineffective in failing to present evidence that he tendered a check in the amount of $4,220.00, dated April 15, 1994, to the St. Tammany Parish Police Jury (Police Jury) as payment of litter fines collected in 1991-92. Additionally, he argues several witnesses should have been called who would have testified as to the confusion in the law regarding litter fines collections, as well as his attempts to seek clarification on this issue.
Our review reveals no error in the trial court's conclusion that defendant presented insufficient evidence at the motion hearing to establish his attorneys' trial performance was deficient. Defendant argues strenuously that his attorneys should have presented evidence at trial as to the fact that he sent a check to the Police Jury in the amount of $4,220.00, dated April 15, 1994, as a remittance for litter fines collected in 1991 and 1992. However, the fact that defendant attempted to make this remittance would appear to be of little probative value on the issue of guilt or innocence, since the remittance was not attempted until well after defendant was *267 under investigation for possible improprieties regarding litter fine collections. Thus, we believe there is little probability that evidence of the 1994 remittance would have affected the outcome of the trial, particularly when such evidence is considered in light of the evidence presented at trial indicating that defendant intentionally used money collected from litter fines for his own benefit. In its per curiam opinion reinstating defendant's conviction and sentence, the supreme court outlined this evidence as follows:
According to Belinda Durr, who worked as defendant's secretary for approximately five months at the end of 1992, when the office received cash for litter fines, defendant used the money in a variety of ways, dividing it with the constable "for office expenses or to go to lunch or whatever they wanted to do with it." Durr testified that when she asked about the fines, and about whether the state received any of the money, defendant told her that "what they don't know doesn't hurt them." Maureen Perry, who also worked as a secretary for the defendant, told jurors that whatever cash was received in the office for litter fines or fees for issuing peace bonds would be "disburse[d] at the end of the week." Perry testified that when she asked the defendant about the litter fines, he replied that "it was his money and he said he could do what he wanted." The defendant made a similar statement to Mario Ventura, president of the St. Tammany Parish Justice of the Peace Association, in the early spring of 1992, when both men were attending a conference of justices of the peace in Lafayette. Ventura testified that when he asked the defendant whether he was turning over the litter fines to the parish the defendant replied that he was absorbing the money collected "in court costs ... eating it up in expenses." When Ventura asked how he was doing that, the defendant added, "Well, you're a smart guy, figure it out."
... [T]he defendant's statements to Durr, Perry, and Ventura, and especially the low balance in the Justice of the Peace account in September of 1993, below the total amount collected in litter fines and coinciding with the transfer of nearly nine thousand dollars from the account to his professional law account in New Orleans, all reflected the defendant's design to use the fine money collected to benefit himself and, coincidentally, his public office and not the governing authority of the parish, and that he had thereby intentionally refused to perform the duty placed upon him by law. As the state established on redirect ... the confusion in state law did not affect collection of the litter fines from January 1, 1991 until the summer of 1992, when either act 361 or 362 went into effect. State law and local ordinance gave defendant the right to expect reimbursement for the expense of collection from the St. Tammany Parish Police Jury, but only after he had remitted all of the fine money collected, and then only by half. The large transfer from defendant's Justice of the Peace account to his professional law account in September of 1993, after the effective date of 1993 La. 579, which clarified his duty in this respect, negated any defense suggestions that, at least with respect to the litter fines collected, the defendant maintained his St. Tammany account in the manner of an escrow account, holding the fines collected until the end of his term in office, the 1992 confusion in the law subsided, or until someone asked him for the money.
Schwehm, 729 So.2d at 550-51.
We also note that, in rejecting defendant's claim of ineffective assistance of counsel, the trial court specifically observed that defendant's attorneys were aware of the substance of what the witnesses presented by defendant at the motion hearing would have testified to, but did not feel their testimony would have *268 been helpful because it would have "offered mixed messages to the jury." In this respect, it is also pertinent that defendant's trial attorneys, Brice Jones and Marion Farmer, each testified at the motion hearing that the decision not to put on any defense witnesses was made after discussion among themselves and defendant. We note that, in denying defendant's motion, the trial court accepted the testimony of Mr. Jones and Mr. Farmer that the decision to rest without calling any witnesses was a "considered decision" between defendant and his attorneys. The court specifically rejected defendant's testimony that "he did not agree with the decision of his counsel to rest the case and was shocked when Mr. Jones rested ...." In extensive written reasons for judgment, the trial court further stated:
Both counsel felt they had effectively cross examined the State's witnesses and they felt they had an ideal jury. They felt that the tempo of trial was with them and they only needed a strong closing argument to win the case. The defendant agreed with them and all three made the decision to rest without calling witnesses. Both counsel clearly state that defendant supported the decision to rest the case and did not doubt the decision until the verdict came back.
* * * * * *
After review of the evidence and testimony produced at the motion hearing, the Court finds defendant has failed to prove his trial counsels' performances were deficient or that he was prejudiced by these deficiencies. The defendant has failed to prove either part of the two prong test for ineffective counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court further finds that no evidence was produced on the other grounds argued in the motion.
The decision to call or not to call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective counsel. State v. Folse, 623 So.2d 59, 71 (La.App. 1st Cir.1993). Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. Folse, 623 So.2d at 71. Defendant has failed to establish that he was prejudiced by a deficient performance by his trial attorneys. Accordingly, the trial court did not err in denying defendant's motion for new trial.

EXCESSIVE SENTENCE
On original appeal, defendant argued that both sentences imposed by the trial court were excessive. However, since we reversed defendant's conviction on count one (failure to remit litter fines), we did not consider his claim of excessiveness with respect to that sentence. For that conviction, defendant was exposed to a possible sentence of not more than five years imprisonment, with or without hard labor, or a fine of not more than $5000.00, or both. See LSA-R.S. 14:134. He received a sentence of five years at hard labor and a fine of $1,500.00. The last two years of the sentence were suspended, and defendant was placed on probation for five years following his release, with special conditions, including the payment of restitution. The sentence was made concurrent to an identical sentence imposed on defendant's other conviction for malfeasance in office.
A trial court has wide, although not unbridled, discretion in imposing a sentence within statutory limits. State v. Trahan, 93-1116, p. 25 (La.App. 1st Cir.5/20/94); 637 So.2d 694, 708. Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. See State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness *269 of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it shocks the sense of justice. State v. Andrews, 94-0842, pp. 8-9 (La.App. 1st Cir.5/5/95); 655 So.2d 448, 454. This Court has previously indicated that maximum sentences may be imposed only for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. State v. Price, 95-0997, pp. 6-7 (La.App. 1st Cir.6/28/96); 677 So.2d 705, 709. The sentence imposed by the trial court will not be set aside absent a showing of manifest abuse of the trial court's wide discretion. Andrews, 655 So.2d at 454.
On appeal, defendant argues the sentence imposed was excessive because he was a first offender with no criminal record, no victim complained, and he tendered a check (dated April 15, 1994) for over $4,000.00 to St. Tammany Parish as payment for litter fines he collected. He also complains that the trial court failed to take into consideration the favorable testimony of several witnesses at the sentencing hearing, as well as favorable comments in the presentence investigation report.
The record reflects the trial court did in fact consider the presentence investigation report, which recommended that defendant receive a sentence of incarceration rather than a suspended sentence. In sentencing defendant, the trial court stated that a lesser sentence would deprecate the seriousness of defendant's crime. In particular, the court emphasized the fact that defendant's conduct "betrayed the public trust." We note that defendant made absolutely no attempt to remit any portion of the litter fines until after the January 1994 audit raised questions as to this omission. Moreover, the record indicates defendant failed to accept responsibility for his actions.
Finally, we note that the trial court ordered that the instant sentence be served concurrently to the sentence imposed on count three (peace bonds). Since these two convictions arose from different acts and/or transactions, the trial court could have made the sentences consecutive, which would have exposed defendant to maximum, consecutive sentences totaling ten years in length. See LSA-C.Cr.P. art. 883. Since the record supports the sentence imposed, defendant's argument that this sentence is excessive lacks merit.
However, we note patent error in the requirement of restitution imposed as a special condition for the suspension of the last two years of defendant's sentence. In imposing this condition, the trial court stated that defendant was to "make full restitution to all of the affected victims in this case." The court did not specify to whom the restitution should be paid or the amount of restitution to be paid. When a trial court orders restitution without stating the specific amount of the restitution to be paid, the sentence is defective. See LSA-C.Cr.P. art. 895.1 A; State v. Wilson, 613 So.2d 234, 240 (La.App. 1st Cir.1992), writ denied, 93-0533 (La.3/25/94); 635 So.2d 238. Accordingly, although we affirm the sentence, we vacate the condition of restitution and remand this matter to the trial court for a determination of the specific amount of restitution to be paid by defendant and to whom it should be paid. See Wilson, 613 So.2d at 240.
CONVICTION AND SENTENCE ON COUNT ONE AFFIRMED, REMANDED WITH ORDER.
NOTES
[1] Defendant was originally indicted on six separate counts and all but counts one and three were severed.