837 So.2d 749 (2003)
STATE of Louisiana, Appellee,
v.
Jimmy LAM, Appellant.
No. 36,862-KA.
Court of Appeal of Louisiana, Second Circuit.
February 11, 2003.
Rehearing Denied February 27, 2003.
*750 Blanchard, Walker, O'Quin & Roberts by A.M. Stroud, III, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, J. Thomas Butler William Edwards, Assistant District Attorneys, for Appellee.
Before KOSTELKA, DREW and MOORE, JJ.
*751 DREW, J.
Defendant Jimmy Lam appeals from his conviction and sentence for the crime of illegal use of a weapon under La. R.S. 14:94. We affirm the conviction and sentence, but vacate the condition of probation relative to restitution.

FACTS
On January 1, 2000, racial name-calling and ethnic slurs commenced between members of the Blackwell and Lam families, unfriendly neighbors on Rosedown Street in Shreveport. Soon this conflict escalated into a street brawl. During the second wave of fighting, T. P.,[1] the seven-month-old infant son of Maura Blackwell Paige and Wilford Paige, was struck on the forehead, sustaining injuries. The defendant was charged by bill of information with violation of La. R.S. 14:94(A), illegal use of a weapon. Waiving a jury trial, Mr. Lam elected to be tried by a judge. He was convicted and now appeals.
The trial testimony of Jason Blackwell, apparently believed by the trial court, was that:
 the physical conflict began after the defendant called him some names;
 he (Jason Blackwell), attacked the defendant, Jimmy Lam;
 at the time of the attack, the defendant was near his own truck, which was parked in front of the defendant's house;
 he (Blackwell) punched the defendant in the face, knocked him to the ground, and then got on top of him;
 he then picked up the defendant and shoved him into Don Lam, defendant's brother;
 he (Blackwell) got up and went back to his yard and into his garage; and
 he then saw the defendant coming with a baseball bat.
Maura Blackwell Paige testified that:
 at the time of the incident, she had just picked up her infant son, T. P, from his nap;
 she then noticed that her front door was open and her husband, Wilford, was gone;
 she walked out of the house with T.P. to see what was occurring;
 she saw her brother, Jason, fighting in the middle of the street;
 she walked outside to the end of the driveway and yelled at Wilford to break up the fight;
 she watched the Lams run into their garage;
 she saw one of the defendant's brothers hit her brother John Blackwell on the head with a flashlight;
 then she saw the defendant run toward her and her baby and swing a bat at them;
 she put an arm up to slow the bat, holding her baby on her left side as she faced the defendant, who was about an arm's length away;
 she felt the impact of the bat on her back, and felt the baby go limp in her arms;
 her husband (Wilford Paige) pushed her and the baby into the house;
 realizing that her baby was hurt, she and her husband immediately rushed the infant to LSU Medical Center where he was hospitalized for four days with a closed head injury;

*752  the picture of T.P.'s injury shown to her in court was accurate; and
 she identified the defendant, sitting in court, as the person who hit her and her baby with the baseball bat.
Maura's brother, John Blackwell, also testified that:
 the defendant ran across the street, stopped near Maura, then swung the bat and hit her and the baby; and
 the baseball bat shown to him in court was the instrument he saw the defendant utilize in the attack.
Maura's husband, Wilford Paige, testified that:
 he had gone outside to break up the fight between Jason and the defendant;
 he was distracted by one of the defendant's family members, who brandished a policeman's flashlight; and
 he saw the defendant run back across the street with a bat towards Maura and his baby, but did not see the blow that injured the baby.
Charles Poma testified that:
 he knew the Lams from the neighborhood;
 he "hung out" with the Blackwells;
 he and Trey Beard were crossing the street at Rosedown when they witnessed the fight;
 he saw Jason and the defendant arguing;
 Jason and the defendant began fighting in the middle of the street;
 he witnessed Maura run out of the house holding the baby, apparently trying to grab her husband;
 after the initial fight was broken up, he saw the defendant and his family go into their garage and get a bat and a flashlight;
 at this time, the Blackwells were in the grass in front of their house;
 he was not sure who had the bat and who had the flashlight because the light was dim, but the person with the bat went across the street and struck Maura and her baby with it;
 under cross examination, he admitted he did not see the defendant with the bat, but believed he saw one of the defendant's brothers swing the bat at Maura and her baby;
 the fight was still going on in the street when Maura and the baby were struck with the bat; and
 the aluminum baseball bat shown him at trial was the one used in the attack.
Trey Beard testified that:
 he was walking with Poma when they witnessed the fight;
 he heard the defendant and Jason arguing;
 Jason was in his yard or driveway and the defendant was on a walkway, separated by a street and a yard;
 from across the street (about 50 yards away) he saw the fight between Jason and the defendant begin in the middle of the street;
 the streetlight lit-up the middle of the street and he could see who was fighting;
 the Blackwells came out to pull Jason back and the Lams ran out of their house;
 he saw the fight push into the Blackwells' yard, where the light was dimmer and it was harder to distinguish who was fighting;
 he noticed that some of the Lams had objects in their hands, but he couldn't see exactly what they were holding because of the dim light;
 he saw the woman come out of the house and try to break up the fight;

*753  he heard the woman scream; and
 he then heard someone exclaim, "They hit the baby. They hit the baby."
Three of the defendant's siblings, William Lam, Cindy Lam and Don Lam, testified at trial. All three lived with the defendant at their parents' Rosedown Street home at the time of the crime, and all three gave the same basic account concerning how the altercation began: Jason punched the defendant and then jumped on the defendant while the defendant was unloading his truck. However, their accounts of how the altercation progressed thereafter were very different from all the other witnesses.
William Lam testified that:
 while Jason and his brothers ganged up on the defendant, Maura came running out of the house;
 Maura was carrying the baby, wielding a hammer and threatening to kill the defendant;
 the defendant ran away from his attackers, covered in blood and screaming for help;
 not knowing what else to do, and knowing he couldn't help in the fight because of his small size, William handed the defendant a bat;
 the defendant never swung the bat;
 the baby was hit when the defendant was overpowered by Jason and Gabriel (a young black man often at the Blackwell home) and the bat was jerked away from the defendant; and
 the altercation took place in the Lams' yard.
Cindy Lam testified that:
 she saw the initial altercation between Jason and the defendant, but she went back into her house and never saw Maura or the baby;
 the fight never moved into the Blackwells' front yard; and
 none of her family members armed themselves during the brawl.
Don Lam basically corroborated the testimony given by his siblings, William and Cindy.
When Shreveport Police Officer J.C. Stephenson arrived at the scene, the defendant appeared coherent, though he was crying, covered in blood, and had sustained a cut above his eye, which later required stitches.
The defendant did not testify at trial. However, statements made by him at the hospital to investigators were related via testimony given by Shreveport Police Corporal P.J. Lee and Officer Stephenson. When Corporal Lee asked the defendant about a bat, the defendant stated that he thought his brother gave him a bat, but he wasn't sure. The defendant said, however, that if they said he swung a bat at them, then he probably did. The defendant also told Officer Stephenson that he didn't know if he hit the baby, but, if everybody said he did, that he might have.
After a bench trial, the defendant was found guilty as charged. The trial court was impressed with the testimony of the two disinterested witnesses, Charles Poma and Trey Beard. Further, the court specifically found that the testimony given by William Lam was not credible.
The defendant's motion in arrest of judgment was filed, argued and denied. After the pre-sentence investigation report was reviewed, sentencing was held on June 21, 2002. Before sentencing the defendant, the trial court reviewed the facts of the case, noting that the defendant evidently became enraged about losing the initial altercation with Jason and became the aggressor when he took the bat, ran across the street and attacked the Blackwells. *754 The trial court observed that the injury to the baby was probably unintentional, but nonetheless severe. The defendant's lack of a prior criminal record was considered, as was the fact that he is a good student. The defendant was then sentenced to serve 18 months imprisonment at hard labor, which sentence was suspended, with the defendant then being placed on 18 months supervised probation with special conditions. He was also assessed with a fine of $300.00, plus court costs of $232.00, or in the alternative, to serve 50 days in jail. Special conditions of probation ordered by the trial court were that the defendant:
 serve 60 days in the parish jail with credit for time served,
 obtain anger management counseling,
 have no contact with the Blackwell family,
 report regularly to the probation office and
 make restitution for any out-of-pocket medical expenses incurred by the Blackwell family.
It is this last condition of probation that has been attacked in this appeal. The defendant's oral motion to reconsider the sentence was denied, and the defendant now appeals his conviction and this one probationary condition of his sentence.

I. Was The Crime Proven?
Arguing that each element of the offense was not proved beyond a reasonable doubt, defendant contends here that the identity of the accused as the perpetrator was not sufficiently proved. Particularly, the defendant contends that the testimony simply did not exclude the reasonable hypothesis that someone other than the defendant struck the child with the bat. He notes that the trial court relied on testimony given by Poma and Beard, but neither one of them gave definitive testimony regarding the defendant's identity as the perpetrator. The defendant further asserts that none of his statements to police were clear admissions of guilt. Finally, the defendant contends that Maura's testimony of how the child was struck was illogical.
The state argues that the evidence supported the verdict and the trial court's credibility determination should not be disturbed on appeal.

Applicable Law
La. R.S. 14:94, entitled, "Illegal use of weapons or dangerous instrumentalities," provides, in pertinent part:
A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.
B. Except as provided in Subsection E, whoever commits the crime of illegal use of weapons or dangerous instrumentalities shall be fined not more than one thousand dollars, or imprisoned with or without hard labor for not more than two years, or both.
Although the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, *755 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. See State v. Bosley, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12.

Application of Law to Facts
The evidence presented by the state, viewed in the light most favorable to the prosecution, was clearly sufficient to conclude beyond a reasonable doubt that the defendant, Jimmy Lam, utilized a dangerous weapon in the latter stages of the melee. The state proved the intentional or criminally negligent use of an article where it was foreseeable that the article may result in death or great bodily harm to a human being; i.e., the defendant intentionally or negligently struck the head of an infant victim with a baseball bat, which foreseeably caused a serious head injury to the infant victim.
The fact that a serious closed head injury was sustained by the infant victim was not contested at trial. Also, uncontested was that the bat admitted into evidence caused the infant's head injury. However, very much at issue were:

*756  the manner by which the injury was sustained, and
 the identity of the perpetrator of the crime.
Regarding both issues, there was sufficient direct evidence presented at trial through eyewitness testimony to convict Jimmy Lam as the perpetrator. At least two eyewitnesses (Maura and her brother, John) testified that the defendant ran toward the mother and the infant victim, wielding the bat. These witnesses saw the defendant swing the bat and strike the victim. Maura felt the impact of the bat, and felt her infant go limp. This scenario was partially corroborated by several witnesses, including two eyewitnesses who were uninvolved in the altercation. When this direct evidence is viewed in the light most favorable to the prosecution, the facts established by the direct evidence and inferred from the circumstances established by that evidence were sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every element of the crime. State v. Sutton, supra; State v. Owens, supra.
Testimony which related that Maura entered the fray, carrying the baby while armed with a hammer was obviously not believed by the trier of fact. Furthermore, other testimony that the defendant was defending himself, and the infant was hit with the bat while the defendant was being disarmed by the Blackwells, was also obviously determined not to be credible. This court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. See State v. White, supra. Even though the defendant claims that he was not the person who committed the crime, the state negated any reasonable probability of misidentification, and carried its burden under the Jackson standard. See State v. Powell, supra. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, supra. This assignment of error lacks merit.

II. Is the Statute Unconstitutionally Vague?
The defendant argues that La. R.S. 14:94 is unconstitutionally vague because it fails to define "dangerous instrumentality." He contends that "article" is simply too vague because it has so many definitions. The defendant asserts that the problem with the statute is that it uses a term with an accepted meaningweaponand then qualifies it by limiting it to firearms, articles, liquids, or substances. He argues that a bat, which would fit within the meaning of weapon, is thus excluded from the scope the statute because it is not a firearm, article, liquid or substance.
The state characterizes as untenable the defendant's argument that an average person cannot understand that a bat is an "article," and that swinging a bat at people would be prohibited conduct. The state also directs this court's attention to the defense's argument on the motion at the hearing on the arrest of judgment. At that time, defense counsel stated, "A bat is an object. A bat is an item."

Applicable Law
In State v. Hair, 2000-2694 (La.5/15/01), 784 So.2d 1269, the Louisiana Supreme Court reviewed the applicable law with regards to challenges to statutes as being unconstitutionally vague:
In determining the constitutionality of a statute, we must follow the basic rules of statutory construction. A statute *757 is presumed to be constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute. A statute should be upheld whenever possible. Louisiana criminal statutes must be "given genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3.
A statute is unconstitutionally vague if an ordinary person of reasonable intelligence is not capable of discerning its meaning and conforming his conduct thereto. This occurs where a statute either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. In such instances, the statute violates due process of law. A criminal statute must provide adequate standards by which a party may be determined to be guilty or not guilty so that an individual's fate is not left to the unfettered discretion of law enforcement.
Accordingly, under the "void-for-vagueness" doctrine, a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of the accused. La. Const. art. 1 § 13. Broad language is not in itself vague, particularly where it is clear that the legislature intended to make criminal all acts of a certain kind.
784 So.2d at pp. 1273-1274. (Citations omitted.)
In State v. Hair, supra, the defendants contended that the complained of statutes were unconstitutionally vague because certain phrases within those statutes are themselves vague. As the Hair court noted, the fact that a statute's terms are subjective and susceptible to interpretation does not render it vague. The court further stated:
Words in statutes need not have the same precision as mathematical symbols. Due process requires only that the language of a statute have generally accepted meaning so that a person of ordinary and reasonable intelligence is capable of discerning its proscriptions and is given fair notice of the conduct which is forbidden by its terms. Even generic terms are often used by the legislature in defining criminal conduct. A statute need not set out every circumstance and variation in conduct which may be a violation thereof.
784 So.2d at p. 1274. (Citations omitted.)
Black's Law Dictionary, Seventh Edition, 1990, defines "article" as, "Generally, a particular item or thing." This is not difficult to understand.

Application of Law to Facts
The earliest cave man chose a stick as his first weapon.[2] Here, certainly an ordinary person of reasonable intelligence is capable of discerning that the meaning of "article" in La. R.S. 14:94 could include a baseball bat. That same ordinary person is also capable of conforming his or her conduct to the statute by not hitting someone with the bat. It was foreseeable that what Mr. Lam did here could result in death or great bodily harm to a human being. La. R.S. 14:94. See State v. Hair, supra. This statute neither forbids nor requires the doing of an act in terms so vague that men of common intelligence *758 must necessarily guess at its meaning and differ as to its application. Analyzed under the "void-for-vagueness" doctrine reiterated in State v. Hair, supra, La. R.S. 14:94 meets the two requirements to satisfy due process: (1) it gives adequate notice to individuals that certain contemplated conduct is proscribed; and (2) it sets forth adequate standards for those charged with determining the guilt or innocence of the accused. Broad language is not in itself vague, particularly where it is clear that the legislature intended to make criminal all acts of a certain kind. State v. Hair, supra. This assignment of error is therefore without merit.

III. Is the Condition of Probation Relative to Restitution Illegal?
The crimes in the Louisiana Criminal Code (R.S. 14: 1-143) list their elements, and the penalty (incarceration and/or fine) for each criminal violation. Thus, the trial court's basic "sentence" pertains to incarceration and/or fine (plus costs of court).
If the trial court suspends a portion of the sentence, it may place the defendant on probation, and add reasonable conditions of probation thereto. Arguments can be made as to whether the conditions of probation are actually a part of the sentence itself or a separate entity appended to a suspended sentence.
Before August 15, 1999, the collection of restitution from a defendant had to be accomplished in the criminal courts as a condition of probation pursuant to either La.C.Cr.P. art. 895.A(7) or La.C.Cr.P. art. 895.1.A, which meant that at least some portion of the sentence itself was suspended. Effective August 15, 1999, La.C.Cr.P. art. 883.2 now allows restitution to be implemented as a part of the sentence itself, without need of probationary conditions.
Here, the defendant complains that the trial court erred in imposing a probationary condition requiring:
 an unspecified amount of restitution to the Blackwell family,
 without setting out the mode, manner and method of payment.
On this technical point, he is correct, as this special condition of probation does violate La.C.Cr.P. arts. 895.A(7), and more particularly, 895.1.A(1).
When a trial court orders restitution without stating a specific amount of restitution to be paid, the sentence is defective. State v. Schwehm, 97-1544 (La.App. 1st Cir.9/24/99), 754 So.2d 264, writ denied, 99-2964 (La.3/31/00), 759 So.2d 68.
When this article is not strictly complied with, an appropriate remedy would normally be a remand so that the trial court can determine the amount and manner of restitution (lump sum or monthly payments, according to earning capacity and assets). State v. Schwehm, supra. Here, however, we choose merely to vacate this condition of probation, and otherwise affirm the sentence and conditions of probation, because Ms. Paige has expressed to the probation officer, according to the pre-sentence report:
 an inability to come up with the correct restitution numbers, and
 an antipathy to receiving any restitution from this defendant.
The state argues that:
 the defense waived this argument by not objecting to the sentence when making its oral motion for reconsideration, citing La.C.Cr.P. art. 881.1;
 La.C.Cr.P. art. 883.2 is applicable, which only requires that the trial court order the defendant to make restitution to the victim as part of any sentence imposed (not a specific sum); and

*759  the amount here was in fact ordered for a specific and ascertainable sum the out-of-pocket medical expenses not covered by insuranceand the refinement and method of payment are properly part of the province of the probation officer's supervisory powers.[3]
However, we are unpersuaded by these arguments, in that:
 sentencing matters (and this problem is at least tangential to sentencing) are always reviewable for errors patent; State v. Schwehm, supra.

 the state's proffered article 883.2 is simply not germane to this instant inquiry, because the trial court chose to seek restitution through articles 895.A(7) and 895.1.A(1); and
 since reasonable people could always disagree about what is an appropriate amount of restitution in many situations, articles 895.A(7) and 895.1.A(1) are specific in making this a mandatory part of the trial court's function.

Applicable Law
La.C.Cr.P. art. 895.1, entitled "Probation; restitution; judgment for restitution; fees," provides in part:
A. (1) When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.

Emphasis added.
Accordingly, we must vacate the illegal probationary condition relative to restitution. We note that the trial court could always add a condition of probation in conformity with articles 895.A(7) and 895.1.A(1) at any time during the probationary period, should the child's mother cooperate in the restitution process. La. C.Cr.P. art. 896. See State v. Gross, 517 So.2d 456 (La.App. 1 Cir.1987).

IV. Error Patent
Defendant's request that this court review the record for errors patent is unnecessary since such a review is made automatically in all criminal cases. State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556. The error patent found is discussed previously in this opinion.

DECREE
The defendant's conviction and sentence are affirmed, but the probationary condition ordering restitution to the victim is vacated.
CONVICTION AFFIRMED. SENTENCE MODIFIED, AND AS MODIFIED, AFFIRMED.

APPLICATION FOR REHEARING
Before GASKINS, PEATROSS, KOSTELKA, DREW, and MOORE, JJ.
Rehearing denied.
NOTES
[1] The victim's initials will replace his full name to insure compliance with the confidentiality provisions of La. R.S. 46:1844(W).
[2] Possibly a rock.
[3] This third position certainly makes sense, but it is not the law.