DREW, J.
11 Richard Kennedy pled no contest to unauthorized use of collateral securities. La. R.S.14:201(1). He received, as agreed, a five-year hard labor sentence, all suspended, with five years of supervised probation. The agreement was that the court set the amount of restitution. After a hearing, the court did so, fixing the amount as payment of $53,190.71, all owed to Citizen’s Bank (“Bank”) as restitution. The defendant now appeals the amount of restitution. We affirm, with instructions.
FACTS
The material facts are uncontroverted. In December 2001, the defendant (as the owner/operator of Ark-La-Tex Marine) entered into a “floor plan” loan agreement with the Bank which allowed the defendant a revolving line of credit up to $101,045.00 for the purchase of boats, motors, and trailers. To secure this line of credit, Kennedy granted the Bank a security interest in “all inventory” as collateral. As each boat product was sold, defendant was supposed to pay the invoice amount to the Bank.
Kennedy became ill in early 2002, and the business suffered. In March of that year, an independent audit revealed that the products were being sold out of trust without payment to the Bank. The defendant went broke and closed his business in July 2002.
In August 2002, the defendant was charged by bill of information, originally pleading not guilty. In February 2005, he withdrew his former plea and pled nolo contendere as charged. The terms of the plea bargain were that, in exchange for the no contest plea, defendant would receive the sentence as outlined before, with only the amount and conditions of 12restitution being left up to the discretion of the trial court at a restitution hearing. All terms and conditions of the plea were agreed upon, with the exception of restitution.
A hearing was held on May 31, 2006, at which time the Bank’s business records showed an outstanding principal balance of $53,190.71, and another $17,741.26 in lost accrued interest. These amounts were confirmed at the hearing by Robert Yanich (the Bank’s current asset manager) and Beverly McMillan (the Bank’s former compliance officer who served in that capacity at the time of defendant’s loan and default).
At the restitution hearing, Kennedy admitted his noncompliance with the loan agreement. He contended, however, that when he closed his business in July 2002, he had approximately $82,089 worth of inventory (consisting mostly of used boat products that were traded in by customers for the purchase of new boat products).[1] He asserted that the value of this inventory was more than enough to cover the outstanding balance on his loan. During cross-examination, Ms. McMillan acknowl *1103 edged that there were used boat products in defendant’s remaining inventory, but the Bank was not able to sell them because it did not believe that it had lawful title to the products. The only payments or proceeds applied against the balance of defendant’s loan were made on March 8, 2002 (principal), April 1, 2002 (principal), April 2, 2002 (principal), June 12, 2002 (principal), and November 13, 2002 (interest), respectively, thus reducing the principal loan | abalance to $53,190.71. As of May 31, 2006, no other payments or proceeds were applied against the loan balance.
At the hearing, neither the state nor the defense presented any testimony or evidence regarding defendant’s current earning capacity, his remaining assets, or lack thereof.[2] The record does not even reflect whether defendant was employed as of May 31, 2006.
At the conclusion of the hearing, the learned trial court set the amount of restitution at $53,190.71, to be paid monthly during the probationary period. The trial court further stated that:
[I]f it’s determined that there are some credits that have not been credited to Mr. Kennedy’s account at some later date but that should be, then any credits against that balance are to be provided to the probation office, and the Court will give him credit for that, any credits that he would have due based on that amount.
DISCUSSION

Defendant’s Alleged Indigency

The defendant did not request reconsideration of the sentence, nor of the amount of restitution, but instead filed a motion for appeal. In his motion, he requested “to have an attorney appointed to him because of his financial situation and his inability to afford an attorney.” The trial court granted an order of appeal but denied defendant’s request for appointment of appellate counsel' because there was no showing of indigency.
|4Months later, in January 2007, both defendant and his trial counsel filed motions with this court. Defendant sought an extension of time within which to file his appeal brief. His lawyer sought to withdraw and requested that the case be remanded to the trial court for an indigen-cy hearing to appoint appellate counsel. On January 4, 2007, this court did so, ordering:
As no inquiry has been made regarding the defendant’s present financial situation, the trial court is hereby directed to conduct necessary proceedings in accordance with La. R.S. 15:147 for a determination of indigency within 45 days of the date of this order and, if necessary, to appoint counsel for the appeal.
The defendant’s current attorney, Robert Thompson, who did not withdraw from his representation of the defendant at the conclusion of the trial proceedings, and is thus still attorney of record in this appeal, shall be directed by the trial court to participate in any necessary proceedings to determine the defendant’s indigency and his representation on appeal. The trial court is directed to cause the supplementation of the appeal record, in duplicate certified original, with the minutes, transcript and any orders arising from the pro *1104 ceedings we now direct, within 60 days of this order.
The trial court subsequently supplemented the appeal record with the following minute entry dated January 29, 2007:
The accused, PRESENT with counsel, Rob-ERT Thompson, counsel FOR the accused MADE AN ORAL MOTION TO WITHDRAW AS COUNSEL. Said motion was submitted and GRANTED. THE ACCUSED STATED TO THE COURT THAT HE IS UNABLE TO HIRE COUNSEL, AND THE COURT APPOINTED THE APPELLATE PROJECT AS COUNSEL FOR THE ACCUSED.
(Judge R. Emanuel)
The instant appeal involves an agreed sentence with a contested special condition of probation, as to the amount of restitution.[3]
| ¡¡Conditions of probation are tangential to sentencing, and reviewable for errors patent. See State v. Lam, 36,862 (La.App.2d Cir.2/11/03), 837 So.2d 749, writ denied, 2003-0945 (La.10/3/03), 855 So.2d 308.
When a defendant is placed on probation, it may impose any specific condition of probation that is reasonably related to rehabilitation, including a requirement of making reasonable restitution to the aggrieved party for direct losses caused by his offense. See La. C. Cr. P. art. 895.1.
The trial court ordered defendant to pay the Bank $53,190.71 in monthly installments during the term of his probation, or $886.51 per month ($53,190.71 divided by 60 months). Although the trial court recognized that this amount was “a large, substantial amount,” this record does not reflect anything relative to defendant’s financial condition at the time of the hearing, including his income or funds from employment or any other source, property owned by him or in which he has an economic interest, outstanding obligations, number and ages of dependents, or job training history. There is no pre-sentence investigation report. These facts preponderate that a standard PSI would have been very helpful.
Defendant’s financial condition is significant because unless the restitution amount is “reasonable” based on defendant’s earning capacity and assets, such a requirement for an indigent person serves no rehabilitative purpose and would be constitutionally excessive on its face. See State v. Carey, 392 So.2d 443 (La.1981); State v. Stephenson, 32,931 (La.App.2d Cir.3/10/00), 755 So.2d 373, writ denied, 2000-1239 (La.2/9/01), 785 So.2d 28.
| (¡Adjustments and credits to the amount of restitution must be addressed by the trial court, not the probation department. See State v. Peters, 611 So.2d 191 (La.App. 5th Cir.1992).[4] See also State v. Dauzat, 590 So.2d 768 (La.App. 3d Cir.1991), writ denied, 598 So.2d 355 (La.1992).[5] Because the trial court made no findings on the record as to the issue of credits even though defendant devoted much of his testimony and evidence to that issue, it is unclear whether the court found that de *1105 fendant’s testimony was not credible or whether it merely decided to leave that determination to the probation office, or whether there was another reason.
The learned trial court did an excellent job in determining the amount of restitution, and we affirm its ruling in the matter. However, should our sister judge consider revocation in the future, these issues must be examined or re-examined at or before any revocation hearing:
• whether defendant is entitled to appointed counsel on the trial level, based on his financial situation at that time;
• whether the trial court should adjust any outstanding principal loan balance in any way, as to any credits due;
• whether defendant’s present earning capacity and assets continue to justify the amount determined by the court;
• whether any civil suits or bankruptcy proceedings justify an adjustment to the restitution amount;
|7« whether the bank s claim should be reduced on account of any security interest validly possessed by the bank at the time defendant walked away from the business; and
• whether the Bank wasted or sold these assets in detriment to defendant’s rights.
, We affirm the trial court’s fixing of the amount of restitution. We instruct the trial court to examine the questions noted herein, before entertaining the option of revocation, in the event of nonpayment.
DECREE
AFFIRMED, WITH INSTRUCTIONS.

. Defendant valued his inventory, including parts and accessories, at $67,329; furniture and fixtures were valued at $14,760. These amounts total $82,089.

. At the hearing, defense counsel made references to a purported civil suit that the Bank filed against defendant. We do not know, however, when the lawsuit was filed, what the lawsuit concerned, its outcome, or whether it is still pending. Though he claimed that he was bankrupt, we also don't know whether or not he availed himself of the protection of a formal bankruptcy proceeding.

. Defendant agreed that some restitution would be made as a special condition of probation.

. Probation condition that ordered restitution in lump sum and left probation department to determine if sufficient amount had been paid each month was insufficient to fulfill statutory requirement that court set amount of restitution and, thus, remand was required to afford court opportunity to consider earning capacity and assets of defendant and set more determinate amount of restitution.

.When a sentencing judge orders a defendant to make restitution to a victim, La. C. Cr. P. arts. 895(A)(7) and 895.1(A) require the trial court, not the probation officer, determine the amount of restitution — this error cannot be corrected by the appellate court.