784 So.2d 1269 (2001)
STATE of Louisiana
v.
Ronnie HAIR, Albert Ducote & Allie H. Brewer.
No. 2000-KA-2694.
Supreme Court of Louisiana.
May 15, 2001.
*1270 Richard P. Ieyoub, Attorney General, Charles F. Wagner, District Attorney, Thomas C. Walsh, Jr., Alexandria, Counsel for Applicant.
Henry H. Lemoine, Jr., Pineville, J. Michael Small, Sue Ann Kelly, Alexandria, Counsel for Respondent.
Ann C. Coco, Herman Robinson, Perry M. Theriot, Baton Rouge, Counsel for Louisiana Department of Environmental Quality (Amicus Curiae).
TRAYLOR, J.[*]
Defendants Ronnie Hair, Allie Brewer, and Albert Ducote were charged with criminal responsibility for the discharge, emission, or disposal of asbestos in violation of La.Rev.Stat. § 30:2051-2065, collectively known as the Louisiana Air Control Law (LACL), following their repair and remodel work on a building project on behalf of their employer, England Authority. The defendants filed a Motion to Quash the Indictment, claiming the LACL is unconstitutionally vague and overbroad, does not give adequate notice of proscribed conduct, or provide adequate standards for determining guilt. The trial court granted the motion and quashed defendants' indictment. The district attorney appealed this ruling directly to this court under La. Const. art., V, § 5(D). For the following reasons, we reverse the judgment of the trial court, overrule the motion to quash the indictment of all three defendants, and remand to the trial court for further proceedings.

*1271 FACTS AND PROCEDURAL HISTORY
Defendant Ronnie Hair is the director of operations of the England Economic and Industrial Developmental District, a public agency charged by the State of Louisiana with the redevelopment of England Air Force Base, a former military installation. As director of operations, defendant Hair was responsible for overseeing the repair, remodeling, renovation, and demolition of certain buildings located on the base. Between October and December 1997, defendant Hair supervised the demolition of Building # 1200, also known as the commissary. During the project, defendants Brewer and Ducote agreed to work overtime to remove asbestos-insulated water pipes from the ceiling. On two consecutive days after the normal workday ended at 4:00 p.m., Brewer and Ducote donned protective suits, face masks, and air packs, wet the pipe casings, and sawed the pipes into pieces. They then used a saw to remove the pipes' hard casing of asbestos. Defendants Brewer and Ducote placed the asbestos in regular 30 gallon plastic garbage bags and used a front-end loader to haul the bags to a nearby warehouse for storage. The remaining stripped pipes were not cleaned and were loaded into Ducote's pick up truck, hauled to and discarded behind England's shop.
A few weeks after removing the asbestos, defendant Hair contacted the Department of Environmental Quality (DEQ) for information on the proper disposal means of the asbestos casings. Hair's inquiry to the DEQ apparently led to an investigation of the defendants' actions, and eventually to the return of the indictment charging the defendants with violating the criminal statutes at issue before this court.
In April of 2001, Hair, Ducote, and Brewer filed a motion to quash the indictment alleging that the general criminal penalty enforcement provision of La. Rev. Stats. 30:2025(F)(1)(a) and 30:2057 are unconstitutionally vague and overbroad. Specifically, the defendants argued that, under La.Rev.Stat. 30:2025(F)(1)(a), an ordinary person of reasonable intelligence does not have the necessary scientific expertise to know whether a "substance is one that endangers or that could endanger human life or health." According to the defendants, while the average person might have a general understanding that exposure to asbestos poses a health risk, the average person does not know that asbestos can be either "friable" or "nonfriable," and that only friable asbestos is believed or known to present a serious health risk to humans. According to the Environmental Protection Agency internet pamphlet Asbestos in Your Home, at http://www.epa.gov/iaq/pubs/asbestos. html,[1] friable asbestos is generally considered to be any material that contains asbestos *1272 and when crushed or pulverized by the application of pressure releases long, thin, durable fibers into the air that when inhaled can cause tissue damage in the lungs. On the other hand, non-friable asbestos is not considered a health risk because it is adhered to a product by a strong binding agent such as cement or rubber which prevents the release of asbestos fibers. Id.
In this case, it appears that the defendants proceeded as if the insulation they removed contained asbestos by donning elaborate protective gear. However, the defendants took no steps to contain the asbestos to the site or protect anyone else despite the plethora of federal and state regulations designed to protect general health and welfare during asbestos abatement.
The defendants further argued, without citing any supporting authority, that the "scientific community" accepts that there is no way to visually identify asbestos and may only confirm whether a material is asbestos by taking a sample and analyzing it in a laboratory. As such, the defendants contended that the average person, who likely does not have the necessary scientific training or access to a laboratory, cannot determine whether asbestos is friable or non-friable and, thus, does not know whether his or her actions fall within purview of the criminal statute, La. Rev.Stat. 30:2025(F)(1)(a). Similarly, the defendants claimed that the average person likely cannot determine whether a substance is a "toxic air pollutant," as defined in La.Rev.Stat. 30:2053(3)(a) and regulated under La.Rev.Stat. 30:2057, because identifying such a substance depends on whether the substance is known, "based on scientifically accepted data," to cause a variety of stated health problems. The defendants argued that the phrase "scientifically accepted data" is unconstitutionally vague because it is unclear from the LACL what information falls within this criteria.
The trial court agreed and quashed the indictment, stating:
[T]he statute is unconstitutionally vague in that it fails to prescribe specific conduct that an individual would in fact be put on notice that would be against the law. When the term asbestos is used, that term may be used for a number of different materials and as stated by Mr. Walsh [defense counsel], it's not until certain asbestos is removed and/or crumbled that that asbestos becomes what is believed to be prescribed conduct that the State of Louisiana and/or United States is trying to deter.[2]
*1273 The State now seeks a review of that ruling. In addition, the State asks this court to determine whether the defendants can properly challenge a statute for vagueness in a pretrial motion to quash the indictment in light of this court's holding in State v. Boyd, 97-0579 (La.4/14/98), 710 So.2d 1074. We will first discuss the propriety of the trial court's grant of defendants' motion to quash.

MOTION TO QUASH
It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. United States v. Powell, 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); United States v. Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); State v. Boyd, 97-0579 (La.4/14/98), 710 So.2d 1074. A defendant engaged in conduct clearly described in a statute cannot complain of the vagueness of the statute as applied to others. Melugin v. Hames, 38 F.3d 1478, 1486 (9th Cir.1994). A defendant may not establish that a statute is unconstitutionally vague by speculating about hypothetical conduct which could also be prosecuted under the same statute. State v. Sandifer, 95-2226, p. 10 (La.9/5/96), 679 So.2d 1324, 1331-32 (citing City of Baton Rouge v. Norman, 290 So.2d 865, 868 (La.1974)). Following this "as applied" rule, this court in State v. Boyd, held that the defendant's vagueness challenge to the phrase "requires medical attention" in the battery of a police officer statute was raised prematurely because "[w]ithout any facts before it, the trial court could not determine whether the statute was applied unconstitutionally against defendant."
In the instant case, given that the challenged statutes do not address First Amendment freedoms, the defendants must show that it lacks specificity to their own behavior and not to a hypothetical situation before they are entitled to relief. The transcript of the pretrial hearing reveals that at the outset of the hearing the State introduced into evidence two references to scientific documents about asbestos, a letter from the England Authority "relative to this proceeding, relative to the issue of asbestos," and a transcript of defendant Ducote's statement to a Louisiana State Police detective and an investigator from the Louisiana Department of Environmental Quality.
The transcript also reveals that during the oral argument the parties made numerous references to the specific actions of the defendants and not simply to the speculative actions of some hypothetical defendant. Though the trial court quashed the indictment before evidence was presented at trial, the court did have some facts before it when evaluating the constitutionality of the statute relative to the defendants' conduct. Accordingly, this case is distinguishable from the above-mentioned cases and, therefore, the defendants properly raised their vagueness challenge in a pretrial motion to quash the indictment. Because the defendants presented adequate evidence upon which the court could rule, the motion to quash was properly raised. The sole issue remaining before this court is the trial court's pronouncement that the statutes are unconstitutionally vague.
In determining the constitutionality of a statute, we must follow the basic rules of statutory construction. State v. Muschkat, 96-2922 (La.3/4/98), 706 So.2d 429. A statute *1274 is presumed to be constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute. Id., State v. Newton, 328 So.2d 110, 117 (La.1975). A statute should be upheld whenever possible. State v. Griffin, 495 So.2d 1306, 1308 (La. 1986). Louisiana criminal statutes must be "given genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La.Rev.Stat. 14:3.

VAGUENESS
A statute is unconstitutionally vague if an ordinary person of reasonable intelligence is not capable of discerning its meaning and conforming his conduct thereto. State v. Greco, 583 So.2d 825, 828 (La.1991); State v. Pierre, 500 So.2d 382, 384 (La.1987); see also Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Palmer v. City of Euclid, 402 U.S. 544, 545, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971). This occurs where a statute either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. In such instances, the statute violates due process of law. Connolly v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). A criminal statute must provide adequate standards by which a party may be determined to be guilty or not guilty so that an individual's fate is not left to the unfettered discretion of law enforcement. State v. Muschkat, 96-2922 (La.3/4/98), 706 So.2d 429, 432, citing Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965); State v. Schirmer, 646 So.2d 890, 903 (La.1994).
Accordingly, under the "void-forvagueness" doctrine, a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of the accused. State v. David, 468 So.2d 1126, 1128 (La.1984), cert. denied, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986); see also La. Const. art. 1 § 13. Broad language is not in itself vague, particularly where it is clear that the legislature intended to make criminal all acts of a certain kind. State v. Defrances, 351 So.2d 133, 136 (La.1977).
In the instant case, the defendants contend that the complained of statutes are unconstitutionally vague because certain phrases within those statutes are themselves vague. The defendants specifically challenged the phrases "one that endangers or that could endanger human life or health" in La.Rev.Stat. 30:2025 and "scientifically accepted data" in La.Rev.Stat. 30:2053 as so vague that the average person cannot discern the meanings of the statutes. However, as this court noted in State v. Boyd, 97-0579 (La.4/14/98), 710 So.2d 1074, 1076, the fact that a statute's terms are subjective and susceptible to interpretation does not render it vague. Words in statutes need not have the same precision as mathematical symbols. Due process requires only that the language of a statute have generally accepted meaning so that a person of ordinary and reasonable intelligence is capable of discerning its proscriptions and is given fair notice of the conduct which is forbidden by its terms. Even generic terms are often used by the legislature in defining criminal conduct. A statute need not set out every circumstance and variation in conduct which may be a violation thereof. City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974).
*1275 Contrary to defendants' arguments, the dangers of asbestos abatement have in fact been so widely publicized that the average person knows, or should know, that cutting without adequate precaution into old pipe insulation may create dangerous health risks. This is especially true in a commercial setting such as the one before this court.
As to the endangerment phrase, Louisiana courts have found that similar phrases are not unconstitutionally vague. For example, in State v. Baron, 416 So.2d 537, 538 (La.1982), this court held the phrase "foreseeable that human life might be endangered" was not vague because the phrase refers to "that which would ordinarily be anticipated by a human being of average reasonable intelligence and perception." Moreover, in State v. Clark, 325 So.2d 802, 811 (La.1976), this court found that the phrase "under circumstances wherein human life is endangered" is not impermissibly vague, and stated that the phrase "offers a sufficiently clear and definite standard of criminal conduct." The jurisprudence regarding these phrases, which are similar in essence to the complained of phrase in the instant case, suggests that the present phrase has a generally accepted meaning such that a person of ordinary and reasonable intelligence would be capable of discerning its meaning. The instant endangerment phrase meets these tests. Defendant's challenge to the constitutionality of the statute fails in this case.
The phrase "scientifically accepted data," found in La.Rev.Stat. 30:2053, is part of a larger statutory scheme to define and regulate "toxic air pollutants" under the LACL. The phrase has an easily understood meaning within the context of its use in La.Rev.Stat. 30:2053 as a criterion established by the legislature to guide the DEQ, and in particular the secretary of that department, in identifying "toxic air pollutants" and developing and publishing a list of such substances under La.Rev. Stat. 30:2060(A)(1). A table of these regulated substances is contained in the Louisiana Administrative Code, Title 33, Part III, § 5112 (LAC 33:III § 5112), and friable asbestos is clearly listed as a toxic air pollutant and as a known and probable human carcinogen. Though the phrase "scientifically accepted data" may appear vague when isolated from the rest of the statute, the average person likely can easily determine whether a substance is a "toxic air pollutant" by considering the term in its context. As such, the defendants should have consulted LAC 33:III § 5112 if they were unsure of whether asbestos fell within this definition.
The defendants also contend that because they did not know whether the asbestos was friable and, therefore, constituted a "toxic air pollutant," they did not have the requisite mens rea requirement, i.e. acting willfully or knowingly, for criminal liability under La.Rev.Stat. 30:2025. Such an argument constitutes a defense on the merits and does not provide grounds for quashing the indictment under La.Rev. Stat. 14:16[3] and State v. Perez, 464 So.2d 737, 740 (La.1985).
La.Rev.Stat. 2025(F)(1)(a) clearly provides criminal penalties for "Any person who willfully or knowingly discharges, emits, or disposes of any substance ... when the substance is one that endangers or that could endanger human life or health...." Furthermore, La.Rev.Stat. 2057 clearly provides that "No person shall... [d]ischarge air contaminants or noise pollution into the air of this state in violation *1276 of regulations of the secretary or the terms of any permit, license, or variance issued hereunder [or] [v]iolate any rule or regulation adopted by the secretary under this Chapter." The conduct proscribed is not ambiguous. Any person of reasonable understanding would realize that it is unlawful to remove friable asbestos from a building without taking adequate precautions under the law.
Applying the standards of statutory construction, the Louisiana Air Control Law is not unconstitutionally vague. The challenged statute is clearly and readily understandable and provides clear standards for determining guilt or innocence of the accused. For these reasons, we reject defendant's argument and the trial court's determination that the statutes are unconstitutionally vague.

CONCLUSION
The defendants properly raised their vagueness challenge in a pretrial motion to quash the indictment. Though the trial court should normally pretermit a ruling on the constitutionality of an allegedly vague portion of a statute where no evidence has yet been presented, the State in the present case introduced some evidence at the outset of the hearing, and therefore the court had some facts to consider when evaluating the constitutionality of the statutes relative to the defendants' conduct.
The general enforcement provision of the "Louisiana Air Control Law," La.Rev. Stat. 30:2025(F)(1)(a), and R.S. 30:2051-2065, are not unconstitutionally vague. The entire statutory scheme provides the average person of reasonable intelligence with adequate notice of whether a substance is a toxic air pollutant that endangers or that could endanger human life or health.
The trial court erred in declaring the Louisiana Air Control Law unconstitutional. For the reasons assigned, the judgment of the trial court is accordingly reversed. The judgment sustaining the motion to quash is reversed and set aside and the motion is overruled. The case is remanded to the trial court for further proceedings.
NOTES
[*] Philip C. Ciaccio, Associate Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.
[1] The EPA pamphlet, further observes asbestos cement roofing, shingles, and siding, "are not likely to release asbestos fibers unless sawed, drilled, or cut." However, steam pipes, boilers, and furnace ducts insulated with an asbestos blanket or asbestos paper tape "may release asbestos fibers if damaged, repaired, or removed improperly." The EPA confirms that unless labeled one cannot tell whether a material contains asbestos simply by looking at it, but cautions, "If in doubt, treat the material as if it contains asbestos or have it sampled and analyzed by a qualified professional." The EPA advises against homeowner sampling because of increased health risks and warns sampling can be more hazardous than leaving the material alone. The EPA nevertheless provides an elaborate list of precautions for the removal of asbestosclad pipes, which require more elaborate precautions in a commercial setting than in the home. The EPA thus advises a homeowner to make sure that the contractor hired for asbestos abatement seals the area off entirely, wets the insulative blanket around the pipe to minimize the release of the fibers when cut, avoids breaking the removed material into small pieces, stores the removed asbestos in sealed, leak proof plastic bags, and thoroughly cleans the area to render the site "visually free of dust and debris."
[2] In its ruling, the trial court did not address defendants' contention that the statute was overbroad. It should be noted that the doctrine of overbreadth applies when a constitutionally protected right is affected by the enforcement of a statute. State v. Griffin, 495 So.2d 1306 (La.1986). Regulation of the emissions into the air of this state is within the scope of the state's police power both to preserve the state's natural resources and as a matter of public health and safety. As applied to defendants, the statute is well within the limits of the state's legitimate interest and authority. Furthermore, overbreadth invalidations of statutes are generally inappropriate when the allegedly impermissible applications of the challenged statute affect conduct rather than speech, which is not present in this case. See Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); State v. Greco, 583 So.2d 825 (La.1991); State v. Neal, 500 So.2d 374 (La.1987). Moreover, the Supreme Court has stated that outside the limited First Amendment context, a criminal statute may not be attacked as overbroad. Schall v. Martin, 467 U.S. 253, 268, 104 S.Ct. 2403, 81 L.Ed.2d 207, (1984) (citing New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113, (1982)). Lastly, that the statute might conceivably give rise to valid overbreadth considerations in a hypothetical situation or to others cannot avail this defendant. State v. Greco, 583 So.2d 825, 828-29 (La. 1991); Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). For these reasons, we pretermit discussion of the overbreadth issue as it bears no merit in the instant case.
[3] La.Rev.Stat. 14:16 provides in pertinent part: "[R]easonable ignorance of fact or mistake of fact which precludes the presence of any mental element required in that crime is a defense to any prosecution for that crime."