940 So.2d 45 (2006)
STATE of Louisiana, Appellee
v.
Johnny Elron RUFFINS, III, Appellant.
No. 41,033-KA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 2006.
Rehearing Denied October 26, 2006.
*47 Elton B. Richey, Jr., Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Shreveport, Lea R. Hall, Jr., Tommy J. Johnson, Brady D. O'Callaghan, Assistant District Attorneys, for Appellee.
Before STEWART, PEATROSS & MOORE, JJ.
PEATROSS, J.
Defendant, Johnny Elron Ruffins, III, was convicted of illegal use of a weapon during a crime of violence and illegal possession of a weapon while in possession of a controlled dangerous substance ("CDS"). For illegal use of a weapon during a crime of violence, the trial court sentenced Defendant to ten years at hard labor without benefit of parole, probation or suspension of sentence. For illegal possession of a weapon while in possession of CDS, the trial court sentenced Defendant to five years at hard labor without benefit of parole, probation or suspension of sentence. The trial court ordered that both sentences be served concurrently. Defendant now appeals. For the reasons stated herein, Defendant's conviction and sentence are affirmed.

FACTS
Johnny and Quontina Ruffins had been married for three years when Quontina decided to end the marriage. Accompanied by her mother, sister, a friend and her two young daughters, Quontina went to the house where she and Defendant lived to pack her and the children's things. Defendant arrived home while they were packing, and Quontina told him that she was leaving. A verbal altercation followed, wherein Defendant stated, "[i]f you want to live, you all need to get out of my house right now." Defendant then left the room, and Quontina went to the back door to get everyone out of the house because she believed Defendant was going to do something crazy. Quontina was standing at the back door in the kitchen when Defendant returned with a rifle, pointing it at her. He chased Quontina as she ran out the door, around the house and across the street. Defendant fired the gun, striking Quontina above the ankle. Witnesses testified to hearing approximately three gunshots, although Quontina testified that she remembered hearing only one shot. Quontina did not realize that she had been shot until she crossed the street and tried to jump across a ditch. Quontina's mother, sister, friend and children took her to the hospital, where she stayed for two months and underwent two surgeries.
Defendant told Shreveport police officers that he was upset and lost his temper when Quontina told him that she was leaving. *48 He admitted shooting at her feet with an SKS assault rifle, claiming that the bullet must have ricocheted and hit her leg. At trial, Defendant testified that he had kicked her out of the house a few days earlier, that he was upset because Quontina had brought these people to his house and that he got the rifle because they were not leaving his house. Defendant admitted in his testimony that he fired his assault weapon while chasing Quontina, but he maintained that he did not fire at her, rather he fired at the ground.
When officers searched the house, they discovered a shotgun, another assault rifle, a .22 caliber Intratec semi-automatic pistol and a Ruger handgun. Inside the bedroom closet, officers also found a handgun on top of a wooden box, which contained a small amount of marijuana.
As previously stated, Defendant was arrested, convicted as charged and sentenced to ten years and five years to be served concurrently. On appeal, Defendant assigns the following two errors (verbatim):
1. The district court erred in denying the defendant's motion to quash the bill of information and his subsequent motion in arrest of judgment, contending that Louisiana Revised Statute 14:94 was unconstitutional as applied to the defendant's conduct.
2. The district court erred in failing to instruct the jury that the state was required to prove a nexus between Johnny Ruffin's possession of the firearms found in the residence and his possession of the small amount of personal use the marijuana found in a bedroom closet.

DISCUSSION
Assignment of Error Number One: Constitutionality of La. R.S. 14:94 as applied to Defendant
Defendant argues that the trial court erred in denying his motion to quash the bill of information and subsequent motion in arrest of judgment, wherein he argued that La. R.S. 14:94 was unconstitutional as applied to his conduct. That statute provides:
94. Illegal use of weapons or dangerous instrumentalities
A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.
B. Except as provided in Subsection E, whoever commits the crime of illegal use of weapons or dangerous instrumentalities shall be fined not more than one thousand dollars, or imprisoned with or without hard labor for not more than two years, or both.
C. Except as provided in Subsection E, on a second or subsequent conviction, the offender shall be imprisoned at hard labor for not less than five years nor more than seven years, without benefit of probation or suspension of sentence.
D. The enhanced penalty upon second and subsequent convictions provided for in Subsection C of this Section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction or convictions, and the time of the commission of the last offense for which he has been convicted. The sentence to be imposed in such event shall be the same as may be imposed upon a first conviction.
E. Whoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm from a motor vehicle located upon a *49 public street or highway, where the intent is to injure, harm, or frighten another human being, shall be imprisoned at hard labor for not less than five nor more than ten years without benefit of probation or suspension of sentence.
F. Whoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm while committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit a crime of violence or violation of the Uniform Controlled Dangerous Substances Law, shall be imprisoned at hard labor for not less then ten years nor more than twenty years, without benefit of parole, probation, or suspension of sentence. If the firearm used in violation of this Subsection is a machine gun or is equipped with a firearm silencer or muffler, as defined by R.S. 40:1751 and R.S. 40:1781, respectively, the offender shall be sentenced to imprisonment for not less than twenty years nor more than thirty years, without benefit of parole, probation, or suspension of sentence. Upon a second or subsequent conviction, under this Subsection, such offender shall be sentenced to imprisonment for not less than twenty years. If the violation of this Subsection, upon second or subsequent conviction, involves the use of a machine gun or a firearm equipped with a firearm silencer or muffler, such offender shall be sentenced to imprisonment for life without benefit of parole, probation, or suspension of sentence.
In his motion to quash, Defendant argued that the statute is overbroad, vague and ambiguous because the facts alleged by the State would also support verdicts of aggravated battery or aggravated assault with a firearm. More specifically, Defendant explained that the statute is unconstitutional because the same facts used to support the verdict of illegal use of a weapon would be the same as those supporting the underlying crime of violence of aggravated battery. He argued that the statute defining illegal use of a weapon during a crime of violence was meant to apply when the crime of violence differed more from the underlying offense of illegal use of a weapon, such as when the crime of violence is a robbery, rape, burglary or kidnaping. At the pretrial hearing, Defendant argued that allowing aggravated battery to be the underlying crime of violence for this charge gave the State the opportunity to inflict a harsher sentence for the same conduct.
Defendant alternatively argued that the statute was overbroad, vague and ambiguous because the penalty was unclear. According to Defendant, while Subsection B defines the penalty for illegal use of a weapon and makes an exception for the penalty to differ if the crime falls into the facts contemplated in Subsection E, Subsection B does not make an exception for the penalty to differ if the crime falls into the facts contemplated by Subsection F, which defines illegal use of a weapon during a crime of violence.
On appeal, Defendant makes a slightly different argument in support of his claim that the statute defining illegal use of a weapon during a crime of violence is overbroad, vague and ambiguous. Defendant urges that, when the crime of violence is aggravated battery, the offense of illegal use of a weapon as defined by Subsection A is then indistinguishable from illegal use of a weapon during a crime of violence as defined by Subsection F.
On the other hand, the State argues that the statute is not unconstitutional and that this court has recognized Subsection F as a proper enhanced penalty provision to the crime of illegal use of a weapon in State *50 v. Walker, 26,026 (La.App.2d Cir.5/4/94), 637 So.2d 583, writ denied, 94-1369 (La.9/30/94), 642 So.2d 868. We agree.[1]
In State v. Hair, 00-2694 (La.5/15/01), 784 So.2d 1269, the Louisiana Supreme Court reviewed the applicable law regarding statutes challenged as unconstitutionally vague:
In determining the constitutionality of a statute, we must follow the basic rules of statutory construction. A statute is presumed to be constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute. A statute should be upheld whenever possible. Louisiana criminal statutes must be "given genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3.
A statute is unconstitutionally vague if an ordinary person of reasonable intelligence is not capable of discerning its meaning and conforming his conduct thereto. This occurs where a statute either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. In such instances, the statute violates due process of law. A criminal statute must provide adequate standards by which a party may be determined to be guilty or not guilty so that an individual's fate is not left to the unfettered discretion of law enforcement.
Accordingly, under the "void-for-vagueness" doctrine, a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of the accused. La. Const. art. 1 § 13. Broad language is not in itself vague, particularly where it is clear that the legislature intended to make criminal all acts of a certain kind.
State v. Lam, 36,862 (La.App.2d Cir.2/11/03), 837 So.2d 749, writ denied, 03-0945 (La.10/3/03), 855 So.2d 308, quoting State v. Hair, supra. Further, this court has previously found that La. R.S. 14:94, including Subsection F, is not unconstitutionally vague:
LSA-R.S. 14:94 clearly prohibits the discharging of a firearm in either an intentional or criminally negligent manner where death or great bodily harm to a human being is foreseeable. . . . Nor, when the enhanced penalty provisions of Subsection F are implicated, does the definition of the crime become less understandable. Instead, one element is merely added: the defendant must be committing or attempting to commit a *51 crime of violence, as defined in LSA-R.S. 14:2(13).
State v. Walker, supra.
Defendant claims that Subsection F is unconstitutionally vague as applied to him because aggravated battery as the underlying crime of violence renders Subsections A and F indistinguishable; and, therefore, it is unclear which punishment provision applies to him. We disagree. Subsection A prohibits the intentional discharging of a firearm when it is foreseeable that it may result in death or great bodily harm to a human being. Subsection F prohibits the same conduct during the attempt or commission of a crime of violence, and aggravated battery is considered a crime of violence under La. R.S. 14:2(13)(e). Aggravated battery is defined as "a battery committed with a dangerous weapon," and a battery is defined as "the intentional use of force or violence upon the person of another." La. R.S. 14:34; La. R.S. 14:33. Whereas Subsection A simply prohibits the intentional discharge of a firearm where it is foreseeable that it may result in death or great bodily harm to a human being, illegal use of weapons during an aggravated battery requires proof of the additional element of intentional use of force or violence being used upon the victim. In the case sub judice, the fact that Defendant actually shot the victim while he was intentionally chasing her and shooting in her direction with an SKS assault rifle distinguishes his actions from those defined in Subsection A. The crimes of illegal use of weapons and illegal use of weapons during the crime of violence of aggravated battery are, therefore, distinguishable so that it is clear which penalty is applicable. We conclude that the provisions defining these offenses are not constitutionally vague as applied to Defendant.
In response to Defendant's pretrial argument that the facts of the case could support more than one charge, we note that this does not render a statute unconstitutional. As discussed above, the crime of illegal use of weapons is distinguishable from aggravated battery and illegal use of weapons during the crime of violence of aggravated battery. Although Defendant argued that illegal use of weapons during a crime of violence was meant to apply when the crime of violence differed more from the underlying charge of illegal use of weapons, the legislative intent to punish "crimes of violence" when a firearm is discharged is shown by the increased penalties found in La. R.S. 14:94(E), 14:94(F) and 14:95(E). State v. Brisco, 04-3039 (La.7/6/06), 933 So.2d 754.
Moreover, the district attorney has the discretion on which offense to charge when the facts could support different charges, even when the penalties for the offenses differ:
The district attorney has broad discretion in both the institution and handling of criminal prosecutions. LSA-Const. art. V, § 26(B), LSA-R.S. 16:1(B); State v. Walker, XXXX-XXXX, p. 4 (La. App. 1 Cir. 12/22/00), 775 So.2d 663, 666, writ denied, 01-0235 (La.12/07/01), 803 So.2d 23. When conduct is made criminal under a section of the revised statutes and is also criminal according to some special statute, prosecution may proceed under either provision, at the discretion of the district attorney. LSA-R.S. 14:4(2). Even when the penalty under a general criminal provision differs from that established in a special provision, the district attorney has the discretion to proceed under either provision. See State v. Juluke, 374 So.2d 1259, 1260 (La.1979); State v. Smith, 597 So.2d 1151 (La.App. 1 Cir.), writ denied, 599 So.2d 311 (La.1992).
*52 State v. Brisco, supra. The fact that the district attorney opted to charge Defendant with illegal use of a weapon during a crime of violence instead of aggravated battery, which has a lesser penalty, does not render the statute unconstitutional.
Finally, Defendant's alternative pretrial argument regarding the confusion over which penalty provision applies under La. R.S. 14:94 is without merit. Subsection B defines the penalty for illegal use of a weapon and makes an exception for the penalty to differ if the crime falls into the facts contemplated in Subsection E. Even so, Subsection F defines the offense of illegal use of a weapon during a crime of violence and the applicable penalty for that offense. The plain language of the statute gives adequate notice of what conduct is prohibited and the penalty for that prohibited conduct. La. R.S. 14:94(F) is not unconstitutional due to vagueness regarding the prescribed punishment for that offense.
This assignment is without merit.
Assignment of Error Number Two: Failure to instruct the jury about a nexus between Defendant's possession of the firearm and marijuana
Defendant argues that the trial court erred by not instructing the jury that it must find a nexus between the possession of the firearm and possession of the marijuana when the evidence shows that he was not in actual possession of both items. The State argues that no such jury instruction is required when the evidence shows that a defendant uses, has actual possession of the firearm or has the firearm within his immediate control. The State further argues that the evidence showed that Defendant used the firearm and had it in his immediate control when he shot the victim.
First, we will discuss whether this court can address this issue on appeal. In this regard, we note that Defendant failed to object to the trial court not giving this jury instruction. According to La. C. Cr. P. art. 801, "[a] party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error," and appellate review of errors pertaining to jury instructions are ordinarily precluded for failure to make a contemporaneous objection as required by La. C. Cr. P. art. 841(A). In State v. Jarvis, 01-1277 (La.App. 4th Cir.2/13/02), 811 So.2d 38, writ denied, 03-0248 (La. 2/13/04), 867 So.2d 677, however, the supreme court recognized an exception to this rule. The court in Jarvis held that an objection is not required to preserve the issue for appellate review when the error is of such significance that it violates fundamental requirements of due process. State v. Jarvis, supra, citing State v. Williamson, 389 So.2d 1328 (La. 1980). The fourth circuit further held that failure to instruct the jury regarding the required nexus between the constructive possession of a firearm and the possession of controlled dangerous substances falls into this exception because it involves the very definition of the crime for which the defendant was convicted. State v. Jarvis, supra. Since it is the same instruction under scrutiny in the case sub judice, we find it prudent to address Defendant's argument regarding failure to so instruct the jury despite Defendant's failure to raise a contemporaneous objection at trial.
We now turn to the merits of Defendant's argument concerning the jury instruction at issue. In State v. Blanchard, *53 99-3439 (La.1/18/01), 776 So.2d 1165, the supreme court examined the issue of whether La. R.S. 14:95(E), which prohibits a person from possessing a firearm while possessing a controlled dangerous substance, criminalizes the constructive possession of a firearm by one who also possesses marijuana. In Blanchard, officers found an Uzi pistol in a kitchen cabinet and a small amount of marijuana under a sofa cushion in the living room of the defendant's home. The court noted that the Second Amendment to the United States Constitution and Article I, § 11, of the Louisiana Constitution guarantee the right to bear arms, but that the state is entitled to restrict that right for legitimate state purposes such as public health and safety. The court also noted that those engaged in illegal drug activities do not have the equal right to possess firearms as do law-abiding citizens. State v. Blanchard, supra, citing State v. Warner, 94-2649 (La.App. 4th Cir.3/16/95), 653 So.2d 57, writ denied, 95-0943 (La.5/19/95), 654 So.2d 1089.
The Blanchard court found that "constructive possession" of the firearm was sufficient to constitute "possession" under the statute, but that the state must prove a nexus between the firearm and the drugs if relying upon constructive possession of the firearm:
Guided by those decisions from other states, we find that under La. R.S. 14:95(E), when it cannot be established that the defendant was using or in actual possession of a firearm or that a firearm was within his or her immediate control, the state must prove more than mere possession of the firearm. It must prove some connection between the firearm possession and the drug offense. This connection might be established by the following evidence: (1) the type of firearm involved; (2) the type of controlled dangerous substance involved; (3) the quantity of drugs involved; (4) the proximity of the firearm to the drugs; (5) whether the firearm is loaded; and (6) any other relevant evidence. (Emphasis added.)
State v. Blanchard, supra. The court explained that, when relying upon constructive possession of the firearm, proof of a nexus between the firearm and the drug offense balanced the state's interest in public health and safety with the state and federal constitutional right to bear arms. Id. Since the jury had not been instructed that the state must prove a nexus between the constructive possession of the firearm and the possession of the marijuana found underneath the sofa cushion, the court remanded the case for a new trial. Id.
Defendant's reliance on Blanchard in the instant case is misplaced. Blanchard was a "constructive possession" case (the firearm was in a kitchen cabinet), not an "actual possession case." Indeed, the Blanchard court expressly concluded that "[p]roof of this nexus is not required where the defendant uses or has actual possession of the firearm or has the firearm within his immediate control."[2] (Emphasis added.) Actual possession means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. State v. Hill, 38,400 (La. App.2d Cir.6/23/04), 877 So.2d 173. The case sub judice is an "actual possession" *54 casethe evidence established that Defendant was using the SKS assault rifle when he shot his wife and, thus, that he was in actual possession of the firearm.[3]
Defendant argues on appeal that this jury instruction is required unless the evidence shows actual possession of the firearm and the controlled dangerous substance. We disagree. The court's ruling in State v. Blanchard, supra, only contemplated constructive versus actual possession of the firearm, not the constructive versus actual possession of the controlled dangerous substance. Further, as noted above, the legislative intent to punish "crimes of violence" when a firearm is discharged is shown by the increased penalties found in La. R.S. 14:94(E), 14:94(F) and 14:95(E). State v. Brisco, supra. Since the evidence established that Defendant was in actual possession of the firearm, there was no need for the trial court to instruct the jury regarding a nexus between the constructive possession of a firearm and the possession of the marijuana.[4] The trial court's failure to so instruct the jury was not error.

CONCLUSION
For the foregoing reasons, the convictions and sentences of Defendant, Johnny Elron Ruffins, III, are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, PEATROSS, MOORE and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] We initially note that the constitutionality of this statute has been previously challenged in other cases. In State v. Lam, 36,862 (La. App.2d Cir.2/11/03), 837 So.2d 749, writ denied, 03-0945 (La.10/3/03), 855 So.2d 308, the defendant argued that the statute was vague for failing to define "dangerous instrumentality" and that "article" was too vague for the ordinary person to know that a bat was included in the definition or to understand that swinging a bat at people would be prohibited conduct under this statute. This court rejected that argument, finding that broad language was not necessarily vague and that the statute satisfied the due process "void-for-vagueness" analysis. In State v. Dumaine, 534 So.2d 32 (La.App. 4th Cir.1988), conviction affirmed and remanded for resentencing, 541 So.2d 880 (La.1989), the defendant argued that, because the language of the statute requires only that the harm be foreseeable rather than actual, La. R.S. 14:94 is vague and overbroad. The court of appeal found that contention to be meritless.
[2] The supreme court has recognized the holding of State v. Blanchard that the nexus is required when the firearm is not in the actual possession or under the immediate control of the defendant. See State v. Dabney, 02-0934 (La.4/9/03), 842 So.2d 326.
[3] Although there was evidence that Defendant was in actual possession of a firearm, trial testimony proved a nexus regarding the constructive possession of the other firearms on the premises because a handgun belonging to Defendant was found directly on top of the wooden box containing his marijuana.
[4] Likewise, we note that the court of appeal in State v. Jarvis, supra, held that, while the defendant could raise the issue on appeal even though he had failed to timely object, "when the defendant was in actual possession of the firearm or it was within his or her immediate control, the state must prove no more than mere possession of the firearm." Accordingly, the Jarvis court found that no such jury instruction regarding proof of a nexus between the possession of the firearm and possession of the controlled dangerous substance was necessary because the firearm in Jarvis was under the immediate control of the defendant. State v. Jarvis, supra.