Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,075-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

ERIK A. SHEPHERD                            Appellant

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Claiborne, Louisiana
Trial Court No. 34,403

Honorable Walter E. May, Jr., Judge

* * * * *

WEEMS, SCHIMPF, HAINES & MOORE          Counsel for Appellant
By: Kenneth P. Haines

RONALD J. MICIOTTO

DANIEL W. NEWELL                        Counsel for Appellee
District Attorney

JAMES H. COLVIN, JR.
P. NELSON SMITH, JR.
Assistant District Attorneys

* * * * *

Before STONE, HUNTER, and ELLENDER, JJ.

**ELLENDER, J.**

Erik Shepherd appeals his conviction, after a bench trial, of aggravated assault with a firearm, La. R.S. 14:37.4, and sentence of five years at hard labor (all but 30 months suspended) plus a fine of $1,000, with six months in default. For the reasons expressed, we affirm the conviction, affirm the sentence in part, vacate the sentence in part, and remand for compliance with La. C. Cr. P. art. 875.1.

## FACTUAL BACKGROUND

The incident occurred in the late afternoon of March 2, 2023. Larry Ford, a wood hauler from Haynesville, was clearing trees from a tract across the road from a convenience store near Athens, Louisiana. Ford called the Claiborne Parish Sheriff's Office ("CPSO") to report a disturbance involving a firearm.

Dep. Brian Davis, of CPSO, arrived shortly before 5:00 pm, equipped with a body cam; the recording was introduced in evidence and viewed multiple times at trial. On the video, Ford said he was wrapping up for the day when a person he did not know (later identified as Shepherd) came onto the property, talked "sh*t" to him, acted belligerent, and accused him of not knowing what a pink flag meant.[1] Shepherd thought Ford's crew had dropped several trees onto his (Shepherd's) property, and Shepherd was unhappy about it. Ford replied that if anything was wrong, he would "fix it." After they exchanged words, the man pulled a revolver from his right pants

---

[1] The state offered no evidence regarding what a pink flag means. From context, it seems to be a temporary or provisional boundary marking, less permanent than spray painting on tree trunks.

pocket, pointed it at Ford's stomach, and said, "I've got something for you." Ford backed up until he could jump into his truck and leave the scene. Ford initially described the gun as a "gray and black .38"; later, he said the stock was black and the metal part gray; then, the stock was black and the barrel grey; still later, he said he "thought" there was a gold emblem on the side of the stock.

On the video, Dep. Davis then talked to Shepherd, who had already been stopped by Athens Police Chief Keith Watkins. Shepherd said Ford's crew had been logging, the line was flagged, but the men had dropped trees over his property. Shepherd said Ford "went ballistic," walked over to his (Ford's) truck, and reached inside; at this point, Shepherd "showed" him a gun, but did not pull it out. Shepherd insisted only the handle was showing: "It never left my pocket." Shepherd described his gun as a Charter Arms .38 revolver with a black handle, silver barrel, and no gold emblem.

Dep. Davis testified that even though Ford was very agitated and Shepherd quite calm, he was impressed that Ford had described the gun "to a T," which he could not have done unless Shepherd pulled it on him. He placed Shepherd under arrest.

Ford testified that Shepherd, whom he did not know, came onto their job site, pounded the hood of his crew's truck, and told them to stop working; Ford walked over to see what the problem was. Shepherd instantly called him a "m*therf*cker" and said, "I'm here to show you what pink flagging is." Ford offered to "fix" anything that was wrong, but Shepherd responded, "You don't get it." After a few more exchanges in this vein, the two men took a few steps toward each other, when Shepherd "come out [*sic*] with his gun" and pointed it at Ford's stomach, saying, "I got something for

2

you." Ford testified it was a .38 revolver with a black stock and silver barrel, similar to one he (Ford) had used before, and he had a clear, unobstructed view of it. He admitted that, on the video, he mentioned a gold emblem, which Shepherd's gun did not have. However, he said he might have been seeing "the end of the bullets," the "gold tips on the bullets," as close as they were to him.

On cross-examination, Ford admitted he had said, on the video, the stock was gray, but he was sure he told Dep. Davis it was black; he insisted that he correctly identified the gun.

The state called two more witnesses, Smith and Haynes, employees of Ford's who had been on the job site when Shepherd arrived. They confirmed that he walked up, pounded on their truck, and demanded to know who was in charge, but they drove away before his encounter with Ford occurred.

Athens Police Chief Watkins, who had known Shepherd for years, testified for the defense that *Shepherd* called him to report "crazy stuff" going on. Chief Watkins reached the scene and found Ford "hooping [*sic*] and hollering" that the man "down there" had a gun, a "black and gold pistol, revolver." Hearing this, Chief Watkins glanced down the road and saw what he thought was Shepherd's truck; he rode to it and told Shepherd to wait until the deputy arrived. After this, his conversation with Shepherd was recorded on Dep. Davis's body cam. Chief Watkins recalled Shepherd admitting he grabbed the gun by the handle and pulled it out just enough for Ford to see it, but not all the way. On cross-examination, Chief Watkins admitted he called Dep. Davis and offered to pay Shepherd's bond so he

3

would not lose his job at the railroad. He admitted, nonetheless, that Shepherd may have done what he was accused of.

Shepherd called two witnesses, Rhodes and Jackson, who had worked with him at the railroad and said he had a reputation for integrity and honesty.

Shepherd took the stand in his own defense. He introduced photos showing the west line of his property where Ford's crew was "dropping every tree over on me"; he went to tell them about it. He arrived, seeing Ford's men leaving in a white truck; he "tapped" on the window and was told Ford was in charge. According to Shepherd, he asked if Ford knew what a pink ribbon means; Ford replied they would move anything off his property, "if you ask nicely." Shepherd admitted he mocked this, asking, "Nicely?" Ford then called him a "r*dn*ck m*therf*cker" and "dumb*ss," asked, "Do you want some sh*t?," walked over to his truck, and raised his fist. Shepherd admitted he put his hand on his gun, which was in his pants pocket, but only to let Ford know he was armed. He insisted he never took it out of the pocket or pointed it at Ford. After Ford left, Shepherd put the gun in the truck and called Chief Watson to report a "situation."

On cross-examination, Shepherd denied the incident with the trees made him mad, but admitted he jumped in his truck, armed with the gun, and drove over to confront the men. He also admitted Ford did not have a gun.

On rebuttal, the state recalled Ford, who insisted he never gave any description of the gun to Chief Watkins.

### ACTION OF THE DISTRICT COURT

The court ruled orally that this was not just a "he said, she said" case, but the witnesses' own "words and contradictions" made it much more than

4

a 50/50 proposition. The court found Ford credible and "completely sound" in saying he was in reasonable apprehension of receiving a battery, and his ability to describe the gun was "extremely persuasive." It found Shepherd not credible in his claims that he never took the gun out of his pocket and he thought Ford was reaching in his own truck to grab a weapon. In fact, the court found, Ford was backing away from Shepherd when the gun was drawn. The court found Shepherd guilty as charged.

At sentencing, the court noted the PSI incorrectly stated Shepherd had pled guilty but accepted its view that he showed no penitence for his conduct; there was a lack of appreciation for the seriousness of the crime and its consequences. The court listed the Art. 894.1 factors, finding a suspended sentence would be inappropriate. Admitting it had "never agonized over a sentence like this," it gave Shepherd five years at hard labor, with all but 30 months (2½ years) suspended, a fine of $1,000 plus costs, or 60 days in default, and the usual conditions of probation.

Shepherd appealed, raising two assignments of error.

## DISCUSSION

### *Sufficiency of the Evidence*

By his first assignment of error, Shepherd urges the state presented insufficient evidence to prove the crime of aggravated assault with a firearm. He concedes the standard of review, *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979), and the court's discretion as to credibility, *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, but argues that internal contradiction or irreconcilable conflict with physical evidence will warrant discrediting a witness, *State v. Lambert*, 52,004 (La. App. 2 Cir. 5/23/18), 248 So. 3d 621.

5

He raises two arguments. He first contends that, owing to massive inconsistencies in Ford's testimony, no rational trier of fact could have accepted his claim that Shepherd actually took the gun out of his pocket. He carefully and meticulously recounts the five different accounts Ford gave on video at the scene, the one he gave to Chief Watkins, and the one he gave at trial. He also cites Ford's inaccurate description of his assailant as "clean-shaven." All this, he submits, demolished Ford's credibility. He concludes that on this conflicting evidence, no rational factfinder could conclude that Ford described the gun "to a T" or that Shepherd took it out of his pocket.

The second argument is the state failed to prove Ford was in reasonable apprehension of receiving a battery, an element of R.S. 14:37.4. He contends Ford was highly agitated, angry that Shepherd was trespassing on his job site, and admitted he "prayed" he had a gun in his own truck. Without proof of this element, he concludes, the conviction cannot stand.

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, *supra*; *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604 (2004). The *Jackson* standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a means to substitute its own appreciation of the evidence for that of the factfinder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Galloway*, 55,591 (La. App. 2 Cir. 4/10/24), 384 So. 3d 1167.

6

Where there is conflicting testimony concerning factual matters, the resolution of which depends on a determination of the credibility of the witnesses, the matter is of the weight of the evidence, not its sufficiency. *Tibbs v. Florida*, 457 U.S. 31, 102 S. Ct. 2211 (1982); *State v. Galloway*, *supra*. The appellate court neither assesses the credibility of witnesses nor reweighs evidence. *State v. Kelly*, 15-0484 (La. 6/29/16), 195 So. 3d 449; *State v. Galloway*, *supra*. Rather, the reviewing court affords great deference to the factfinder's decision to accept or reject the testimony of a witness in whole or in part. *State v. Robinson*, 02-1869 (La. 4/14/04), 874 So. 2d 66, *cert. denied*, 543 U.S. 1023, 125 S. Ct. 658 (2004); *State v. Galloway*, *supra*. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Reed*, 14-1980 (La. 9/7/16), 200 So. 3d 291, *cert. denied*, 580 U.S. 1166, 137 S. Ct. 787 (2017); *State v. Jones*, 55,464 (La. App. 2 Cir. 1/10/24), 379 So. 3d 828, *writ denied*, 24-00194 (La. 10/8/24), 394 So. 3d 267.

Aggravated assault with a firearm is defined as "an assault committed with a firearm." La. R.S. 14:37.4. Assault is defined as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36. To convict a defendant of aggravated assault with a firearm, the state must prove the defendant made an attempt to commit a battery, or intentionally placed the victim in reasonable apprehension of receiving a battery by the discharge of a firearm. *State v. Payne*, 52,310 (La. App. 2 Cir. 1/16/19), 262 So. 3d 498, and citations therein. An actual discharge of the firearm is not an element of

the offense. *Id.*; *State in Interest of CB*, 52,245 (La. App. 2 Cir. 6/27/18), 251 So. 3d 562.

In brief, Shepherd has done an exemplary job of cataloguing Ford's descriptions of the gun: five of them to Dep. Davis on the body cam, one at trial, and one to Chief Watkins at the scene (although Ford denied giving a description to Chief Watkins). While these are not completely uniform, they are predominantly consistent, always saying the barrel was gray or silver and mostly saying the stock was black. The only anomaly was the mention of the gold emblem, but this was plausibly explained as seeing the "end of the bullets." On this record, the district court did not abuse its discretion in finding Ford gave a convincing description of the revolver, a description that would not have been possible had Shepherd not pulled the gun on him.

The record also provides an adequate basis for the district court to disbelieve Shepherd's more benign version of the encounter. On the body cam, he never mentioned showing "only part" of the gun to Ford, or that Ford raised a fist at him, but he brought up these exculpatory facts only at trial. He admitted bringing the gun to the site, having it in his right pants pocket, and putting his hand on it, facts that conform to Ford's testimony. The body cam shows Shepherd making light of the whole incident. Given the body cam and the parties' testimony, the district court was entitled to accept Ford's version that the gun was drawn, and to reject Shepherd's that it wasn't.

The record also supports the district court's finding that Ford was in reasonable apprehension of receiving a battery. Ford testified he was afraid that Shepherd would shoot him. Shepherd concedes that, on the body cam, Ford was highly agitated, a reaction that might normally flow from having a

8

gun drawn and pointed at him. In short, the evidence is sufficient to show Shepherd intentionally placed Ford in reasonable apprehension of receiving a battery by the discharge of a firearm. This assignment of error lacks merit.

At oral argument, counsel additionally argued that Shepherd could have been charged under two separate offenses: aggravated assault with a firearm, R.S. 14:37.4, carrying up to 10 years at hard labor; or aggravated assault, R.S. 14:37 (an assault committed with a dangerous weapon, which could include a firearm), carrying only up to six months. The thrust of the argument is that the evidence more fairly met the definition of the latter, lesser offense, so he should have been convicted for that crime. The district attorney has broad discretion in both the institution and handling of criminal prosecutions. La. Const. art. V, § 26(B); La. C. Cr. P. art. 61; La. R.S. 16:1(B). When conduct is made criminal under one section of the revised statutes and is also criminal under some other statute, the prosecution may proceed under either provision, at the discretion of the district attorney. La. R.S. 14:4(2). This court has found no error when the district attorney elected to charge a defendant with illegal use of a weapon during a crime of violence, La. R.S. 14:94, when the facts would have also supported prosecution for aggravated battery, La. R.S. 14:34, which carries a lesser penalty. *State v. Ruffins*, 41,033 (La. App. 2 Cir. 9/20/06), 940 So. 2d 45, *writ denied*, 06-2779 (La. 6/22/07), 959 So. 2d 494. The same rationale applies here.

This assignment of error lacks merit.

### *Excessive Sentence*

By his second assignment of error, Shepherd urges the sentence imposed is unconstitutionally excessive. He cites the sentencing factors of

9

La. C. Cr. P. art. 894.1 and the guarantee against cruel and unusual punishment, La. Const. art. I, § 20, and concedes the sentence of five years "at first glance appears to be well within" the court's discretion. He contends, however: (1) no battery occurred, (2) no shots were fired, and (3) the weapon was not even cocked, so this is nowhere near midrange for the gravity of the offense. He argues his sentence is similar to the four years imposed in *State v. Davis*, 22-548 (La. App. 3 Cir. 2/1/23), 355 So. 3d 742, and the five years in *State v. Brown*, 17-124 (La. App. 4 Cir. 12/12/17), 234 So. 3d 978, *writ denied*, 18-0100 (La. 6/15/18), 257 So. 3d 678, but those cases involved much more serious conduct. He also cites his completely clean criminal history, his long, productive life in Claiborne Parish, and submits there is nothing to show he would be "rehabilitated" by spending time in jail. He concludes that even if the conviction is affirmed, the sentence should be reduced or entirely suspended.

An appellate court uses a two-prong test to review sentences for excessiveness. First, the court must find that the sentencing court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The sentencing court is not required to list every aggravating or mitigating circumstance, so long as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The goal of Art. 894.1 is to articulate an adequate factual basis for the sentence, not to achieve rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982). There is no requirement that any specific factor be given any particular weight at sentencing. *State v. Taves*, 03-0518 (La. 12/3/03), 861 So. 2d 144.

The district court listed several factors working to Shepherd's detriment: this was a crime of violence; Shepherd showed a lack of appreciation for the offense and its consequences, particularly by giving a video statement laced with laughing and vulgarity, and evasive testimony at trial; he seemed to think there would be no charges because the evidence was "he said, she said"; there was some economic loss, as Ford was unable to complete the job that day and now avoids going near Homer to work; a dangerous weapon was involved; Shepherd must have contemplated the possibility of serious harm; and there was some provocation, but no justification. The court also mentioned factors in Shepherd's favor: he had no prior convictions; his conduct showed no deliberate cruelty; the victim was not particularly vulnerable and suffered no physical injury; Shepherd was otherwise law-abiding and such misconduct was unlikely to recur. We find the court adequately complied with Art. 894.1.

The second prong is review for constitutional excessiveness. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is deemed grossly disproportionate if, when crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7. The reviewing court may consider a comparison of

the punishment in the appealed case with sentences imposed for similar crimes. *State v. Fruge*, 14-1172 (La. 10/14/15), 179 So. 3d 579.

We find no abuse of the district court's vast discretion. Although the midrange sentence appears severe for a first-time offender and an offense that resulted in no injuries, much of the argument is premised on Shepherd's narrative: he approached Ford and his men respectfully, Ford taunted and threatened him, and he never actually drew the revolver or pointed it at Ford but only "showed" it. The court obviously discredited this version in favor of Ford's: Shepherd approached belligerently, pounded on the hood of the truck, baited Ford into a heated argument, and pulled a revolver in an effort to intimidate. Viewed in this perspective, the conduct is similar to that reported in *State v. Davis*, *supra*, which affirmed a sentence of four years. Shepherd's sentence of five years, with 2½ years suspended, does not seem disproportionate.

This assignment of error lacks merit.

### Error Patent Review

Since August 1, 2022, the law has required that, prior to ordering the imposition or enforcement of any financial obligation, "the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents." La. C. Cr. P. art. 875.1 (C)(1); *State v. Jamison*, 55,361 (La. App. 2 Cir. 11/29/23), 375 So. 3d 619; *State v. Adams*, 55,696 (La. App. 2 Cir. 5/22/24), 387 So. 3d 914. The court sentenced Shepherd, on April 4, 2024, to a term of imprisonment and a fine of $1,000 with 60 days in default for nonpayment. However, the record does not show that the court

12

conducted such a hearing or that Shepherd waived it. We note that both at trial and on appeal Shepherd has been represented by retained counsel and does not appear to be indigent. However, Art. 875.1 refers to the imposition of "any financial obligation" and uses the mandatory "shall." We are, therefore, constrained to vacate the portion of the sentence that imposed the fine with default time and remand for compliance with Art. 875. *State v. Jamison*, *supra*; *State v. Adams*, *supra*.

## CONCLUSION

For the reasons expressed, we affirm the conviction, affirm the sentence in part, vacate the sentence in part, and remand for compliance with La. C. Cr. P. art. 875.1.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED**.